IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RAYMOND LAVAUGHN GRANT,

                Plaintiff,

      v.

MULTNOMAH COUNTY JAIL *et al.*,

                Defendants.

Case No. 3:24-cv-00772-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Raymond Grant ("Grant"), a self-represented litigant proceeding in forma pauperis, filed this civil rights action against Defendants Multnomah County Inverness Jail ("MCIJ") and Deputy James Kessinger ("Deputy Kessinger") (together, "Defendants"), alleging constitutional violations pursuant to 42 U.S.C. § 1983 ("Section 1983"). Defendants now move for summary judgment on Grant's claims, pursuant to Federal Rule of Civil Procedure 56.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court grants in part and denies in part Defendants' motion for summary judgment.

PAGE 1 – OPINION AND ORDER

## BACKGROUND[1]

On November 8, 2023, Grant was a pretrial detainee at MCIJ. (Compl. at 3, ECF No. 1.[2])

Corrections Deputies Kessinger and Frantzley Morency ("Deputy Morency") were on duty in his

dorm that day. (*See* Decl. James Kessinger Supp. Defs.' Mot. Summ. J. ("Kessinger Decl.") ¶ 2,

ECF No. 18-2; Decl. Frantzley Morency Supp. Defs.' Mot. Summ. J. ("Morency Decl.") ¶ 2,

ECF No. 18-3; *see also* Defs.' Mot. Summ. J. ("Defs.' Mot.") at 7-10, ECF No. 18; Defs.' Reply

Supp. Mot. Summ. J. ("Defs.' Reply") at 2-4, ECF No. 27.) At approximately 8:30 a.m., Deputy

Kessinger announced a clothing exchange in Grant's dorm. (Kessinger Decl. ¶ 3; Compl. at 3.)

Grant interrupted and asked Deputy Kessinger to stop yelling. (Kessinger Decl. ¶ 3; Morency

Decl. ¶ 3; Compl. at 3.)

Deputy Kessinger ordered Grant into the sally port (i.e., a small secure area connected to

the dorm) but Grant did not comply. (*See* Kessinger Decl. ¶ 3; Decl. Andrey Scott ("Scott

Decl.") ¶ 1, ECF No. 25 at 18; Decl. Zakary Hubert ("Hubert Decl.") ¶ 3, ECF No. 25 at 19-20;

Dep. Raymond Grant ("Grant Dep.") 38:15-39:25, Dec. 4, 2024, ECF No. 18 at 12-33; Kessinger

Decl. ¶ 4; Morency Decl. ¶ 4; Compl. at 3; *see also* Pl.'s Resp. Mot. Summ. J. ("Pl.'s Resp.") at

---

[1] The Court views the facts in the light most favorable to Grant because, as the nonmovant, he is entitled to receive the "benefit of factual disputes and reasonable inferences from the evidence." *Silloway v. City & Cnty. of S.F.*, 117 F.4th 1070, 1072 (9th Cir. 2024) (citing *Tuuamalemalo v. Greene*, 946 F.3d 471, 474 (9th Cir. 2019) (per curiam)), *cert. denied*, 145 S. Ct. 1432 (2025).

[2] "A pro se plaintiff's verified complaint must be considered as evidence at summary judgment." *Howard v. Fye*, No. 24-146, 2025 WL 275118, at *1 (9th Cir. Jan. 23, 2025) (citing *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004)); *see also Jones*, 393 F.3d at 923 ("[B]ecause Jones is pro se, we must consider as evidence in his opposition to summary judgment all of Jones's contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where Jones attested under penalty of perjury that the contents of the motions or pleadings are true and correct.").

12, ECF No. 25.) Deputies Kessinger and Morency approached Grant, who was sitting on his bunk. (Compl. at 3.)

Deputy Kessinger ordered Grant to "cuff up" so they could escort him out of the dorm. (Kessinger Decl. ¶ 4; Morency Decl. ¶ 4.) Grant did not comply and remained seated on his bunk. (Kessinger Decl. ¶ 4; Morency Decl. ¶ 4; Grant Dep. 38:15-39:25; Compl. at 3.) Deputy Kessinger then attempted to subdue Grant by putting him in a "neck restraint" and pushing on a pressure point. (Compl. at 3; Pl.'s Resp. at 6.) As Deputy Kessinger attempted to take control of Grant's right arm and place Grant in handcuffs, Grant "jerked away" as a "natural reflex" from Deputy Kessinger's neck restraint. (Kessinger Decl. ¶ 4; Morency Decl. ¶ 4; Compl. at 3; Pl.'s Resp. at 6.)

Deputy Kessinger responded by deploying his Taser in dart-mode, striking Grant in the torso. (Kessinger Decl. ¶ 5; Grant Dep. 42:3-22.) Deputy Morency attempted to assist by grabbing Grant's left arm while Grant was seated on his bunk. (Morency Decl. ¶ 5; Grant Dep. 43:22-44:1; Grant Dep. 44:5-7.) Around this time, Deputy Kessinger deployed his Taser again in drive-stun mode, striking Grant in the groin. (Kessinger Decl. ¶ 6; Scott Decl. ¶ 1; Hubert Decl. ¶ 4; Grant Dep. 44:11-21; Compl. at 3.) Grant believes that Deputy Kessinger deployed the Taser to his groin three times. (Compl. at 3; Pl.'s Resp. at 13; *see also* Scott Decl. ¶ 1; Hubert Decl. ¶ 4.) Deputy Kessinger, however, maintains that he only attempted to strike Grant in the thigh but Grant was "twisting his body around" and the Taser briefly touched [Grant's] groin," and "when Grant called out that the Taser was touching his groin area, [he] immediately moved it away." (Kessinger Decl. ¶ 6.) With other staff members' assistance, Deputies Kessinger and Morency secured Grant in handcuffs. (Kessinger Decl. ¶ 7; Morency Decl. ¶ 5; Grant Dep. 45:4-10.)

PAGE 3 – OPINION AND ORDER

Deputies escorted Grant to the medical clinic without further incident. (Grant Dep. 45:17-46:3.) Medical staff examined Grant and treated him for a small wound on his abdomen from the Taser probes. (*See id.*) Grant received further medical treatment from an outside clinic after he reported pain while urinating. (*See id.* 48:12-50:4.) Grant alleges that he continues to suffer from erectile dysfunction and chronic pain and his "PTSD has got[ten] worse since being tased." (Compl. at 6.)

Defendants submitted video footage of the incident between Deputy Kessinger and Grant. (*See* Decl. Brandon Pedro Supp. Defs.' Mot. Summ. J. ("Pedro Decl.") Ex. 1 (the "Video"), ECF No. 18-1.) The video does not capture the initial interaction between Grant and Deputy Kessinger, but begins as Deputies Kessinger and Morency are approaching Grant sitting on his bunk. (*See id.* at 00:00:00.) The video reveals Deputy Kessinger reaching for Grant's arm and Grant moving his arm away. (*See id.* at 00:00:01-07.) Deputy Kessinger then took a step back from Grant and deployed his Taser in dart-mode. (*See id.* at 00:00:09-10.) The video appears to reveal that Grant was seated upright on his bunk when Deputy Kessinger aimed his Taser toward Grant's torso and deployed it. (*See id.* at 00:00:09-17.) Grant briefly fell back before returning to an upright seated position. (*See id.* at 00:00:16-17.) Deputy Kessinger appears to reposition and point the Taser straight down and tase Grant in drive-stun mode. (*See id.* at 00:00:17-18.) Grant twists and positioned himself on his left side with Deputy Kessinger on top of him. (*See id.* at 0:18-20.)

The video reveals that Deputy Kessinger tased Grant near the groin area but does not reveal (or confirm) the number of times or exact location in which Deputy Kessinger tased Grant. The video also reveals that Deputies Kessinger and Morency struggled with Grant, and appears to show Grant actively struggling or moving as a result of being tased. (*See id.* at

00:00:14-21.) The struggle ended when deputies were able to restrain Grant. (*See id.* at 00:00:21-25.)

## LEGAL STANDARDS

A grant of "[s]ummary judgment is appropriate if there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law." *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (en banc) (citing *Sierra Club v. Bosworth*, 510 F.3d 1016, 1022 (9th Cir. 2007)); FED. R. CIV. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

"A material fact is one that is needed to prove (or defend against) a claim, as determined by the applicable substantive law." *Simmons v. G. Arnett*, 47 F.4th 927, 932 (9th Cir. 2022) (citing *Nat'l Am. Ins. Co. v. Certain Underwriters at Lloyd's London*, 93 F.3d 529, 533 (9th Cir. 1996)); *see also Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) ("A fact is 'material' only if it might affect the outcome of the case[.]" (quoting *Anderson*, 477 U.S. at 248)). "An issue of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Brown v. Arizona*, 82 F.4th 863, 874 (9th Cir. 2023) (en banc) (quoting *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020)); *see also Fresno*, 771 F.3d at 1125 ("[A] dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." (quoting *Anderson*, 477 U.S. at 248)).

In determining whether a genuine issue of material fact exists, a court views the evidence in the light most favorable to, and draws all justifiable inferences in favor of, the nonmoving

party. *See McNeil v. Sherwood Sch. Dist. 88J*, 918 F.3d 700, 706 (9th Cir. 2019) (per curiam)

("The court views 'evidence in the light most favorable to the nonmoving party,' to determine

'whether genuine issues of material fact exist.'" (quoting *George v. Edholm*, 752 F.3d 1206,

1214 (9th Cir. 2014))); *Brown*, 82 F.4th at 874 ("When determining whether a genuine issue of

material fact exists, [a court] 'must draw all justifiable inferences in favor of the nonmoving

party.'" (quoting *Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1189 (9th Cir. 2021))). In

doing so, a "court . . . may not judge credibility, weigh the evidence, or resolve factual

disputes[.]" *Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424, 437 (9th Cir. 2023) (citing *Anderson*,

477 U.S. at 255).

   Generally, the reasonableness of force used is a question of fact for the jury. *See Liston v.

County of Riverside*, 120 F.3d 965, 967 n.10 (9th Cir. 1997) ("[The Ninth Circuit has] held

repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury."); *see

also Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) ("Because [the excessive force inquiry]

nearly always requires a jury to sift through disputed factual contentions, and to draw inferences

therefrom, we have held on many occasions that summary judgment or judgment as a matter of

law in excessive force cases should be granted sparingly."). "If the evidence, reviewed in the

light most favorable to [the plaintiff], could support a finding of excessive force, then the

defendants are not entitled to summary judgment." *Smith v. City of Hemet*, 394 F.3d 689, 701

(9th Cir. 2005) (citations omitted), *disapproved of by Lemos v. County of Sonoma*, 40 F.4th 1002

(9th Cir. 2022).

///

///

///

## DISCUSSION

Grant asserts an excessive force claim under the Fourteenth Amendment arising during his pretrial detention. (*See* Compl. at 1-11.) Defendants argue that they are entitled to summary judgment on Grant's claim because (1) Deputy Kessinger's use of force (i.e., tasing Grant) was "objectively reasonable" and Deputy Kessinger is otherwise entitled to qualified immunity, and (2) Grant failed to allege or present evidence that a county policy, practice, or custom was the cause of a constitutional violation. (*See* Defs.' Mot. at 7-11; Defs.' Reply at 2-5.) For the reasons discussed below, the Court grants in part and denies in part Defendants' motion for summary judgment.

## I.    EXCESSIVE FORCE CLAIM

The Court concludes that genuine issues of material fact preclude summary judgment in Deputy Kessinger's favor on Grant's Fourteenth Amendment excessive force claim. The Court therefore denies Defendants' motion summary judgment on Grant's claim against Deputy Kessinger.

### A.    Applicable Law

The "Fourth Amendment standards of reasonableness govern [pretrial detainees'] excessive force claims[.]"[3] *Applegate v. Baines*, No. 3:23-cv-1368-SI, 2025 WL 392588, at *4

---

[3] "In 2015, the Supreme Court decided *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)[, in which it] . . . held that to succeed on a [Section] 1983 claim brought under the Fourteenth Amendment Due Process Clause, a pretrial detainee 'must show only that the force purposely or knowingly used against him was *objectively unreasonable*' to prevail on an excessive force claim." *Applegate*, 2025 WL 392588, at *4 n.4 (quoting *Kingsley*, 576 U.S. at 396-97). The Supreme Court in *Kingsley* "explain[ed] what 'objectively unreasonable' means . . . [by] rel[ying] heavily on *Graham v. Connor*, 490 U.S. 386 (1989), a case that dealt with the meaning of that phrase within the context of the Fourth Amendment[,] . . . but [*Kingsley*] did not *expressly* state that a proper Fourteenth Amendment excessive force analysis is identical to *Graham*'s Fourth Amendment excessive force analysis." *Id.* District courts have nevertheless "follow[ed] the [Supreme Court's] approach in *Kingsley* and in Ninth Circuit cases deciding claims of pretrial detainees under the Fourteenth Amendment, [and therefore] . . . appl[ied] the Fourth

(D. Or. Feb. 4, 2025) (citing *Lolli v. County of Orange*, 351 F.3d 410, 415 (9th Cir. 2003)); *see also Graham*, 490 U.S. at 395 n.10 ("It is clear . . . that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." (citing *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979))). Thus "[t]o succeed on an excessive force claim, a pretrial detainee like [Grant] must show that 'the force purposely or knowingly used against him was objectively unreasonable.'" *Bell v. Williams*, 108 F.4th 809, 819 (9th Cir. 2024) (quoting *Kingsley*, 576 U.S. at 397); *see also Contreras-Bustillos v. County of Yellowstone*, No. 24-2383, 2025 WL 1766789, at *1 (9th Cir. June 26, 2025) (relying on the same standard and in part on *Bell*).

Courts in this circuit engage in a three-part inquiry to "determine whether an officer's actions were objectively reasonable[.]" *Williamson v. City of National City*, 23 F.4th 1146, 1151 (9th Cir. 2022); *see also Ramsey v. Lake Havasu City*, No. 23-3244, 2025 WL 66048, at *1 (9th Cir. Jan. 10, 2023) (recognizing that the Ninth Circuit "approach[es] an excessive force claim in three stages" (quoting *Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018))). First, courts consider "the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted[.]" *Williamson*, 23 F.4th at 1151 (quoting *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021)). Second, courts consider "the government's interest in the use of force[.]" *Williamson*, 23 F.4th at 1151 (quoting *Rice*, 989 F.3d at 1121). Third, courts consider "the balance between the gravity of the intrusion on the individual and the government's need for that intrusion." *Id.* (quoting *Rice*, 989 F.3d at 1121). Ultimately, courts must "judge the reasonableness of a particular use of force 'from the perspective of a reasonable

---

Amendment excessive force framework outlined in *Graham*, because the analysis [would] be the same." *Id.*

officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id.* (quoting *Rice*, 989 F.3d at 1121).

### B.    Analysis

Applying *Graham*'s balancing test and viewing the evidence in the light most favorable to Grant, the Court finds that there are genuine issues of material fact with respect to whether Deputy Kessinger's use of force was objectively reasonable under the circumstances presented here.

### 1.    Type and Amount of Force

First, the Court considers the "nature and quality of the intrusion" on Grant's "Fourth Amendment interests." *Graham*, 490 U.S. at 396. Grant alleges that Deputy Kessinger tased him once in the stomach and three times in the groin after he refused to comply with Deputy Kessinger's orders. (Compl. at 3; Pl.'s Resp. at 13-14.) Grant received immediate and recurring medical care for his injuries, which included prolonged pain, incontinence, and erectile dysfunction. (*See* Compl. at 1-11.)

Viewing the record in the light most favorable to Grant, the Court concludes that Deputy Kessinger's use of force against Grant—deployment of a Taser once to the stomach and three times to the groin—was a significant level of force. The Ninth Circuit classifies the use of a Taser in dart mode as an "intermediate, significant level of force." *See, e.g.*, *Getzen v. Long*, No. 21-16437, 2023 WL 118743, at *1 (9th Cir. Jan. 6, 2023) ("Using a taser in dart mode is 'an intermediate, significant level of force,' and tasing someone in drive-stun mode causes 'extreme pain' that can constitute 'constitutionally excessive' force when employed repeatedly on someone who is merely passively resistant[.] . . . We consider these means of force to be 'non-trivial.'" (first quoting *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010); then quoting *Mattos v. Agarano*, 661 F.3d 433, 446 (9th Cir. 2011) (en banc); and then quoting *Gravelet-*

*Blondin v. Shelton*, 728 F.3d 1086, 1093-94 (9th Cir. 2013))). Here, even if Taser use in dart mode qualifies as intermediate force, repeated application to Grant's groin area increased the level of force and intrusion on his rights.

## 2. Government Interest

"The Supreme Court's decision in *Graham* identified several factors to consider when evaluating the strength of the government's interest in the force used[.]" *Williams v. City of Sparks*, 112 F.4th 635, 643 (9th Cir. 2024); *see also Hart v. City of Redwood City*, 99 F.4th 543, 549 (9th Cir. 2024) (applying the *Graham* factors). The *Graham* factors are: "(1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Williams*, 112 F.4th at 643 (quoting *Graham*, 490 U.S. at 396).

### a. Severity of the Conduct

The Court must first consider the severity of Grant's conduct at issue. The parties agree that Grant refused to comply with Deputy Kessinger's orders to "cuff up" and "go to the sally port." (Pl.'s Resp. at 12; Compl. at 3; Kessinger Decl. ¶ 4; Morency Decl. ¶ 4.) According to Defendants, Grant "had already demonstrated his unwillingness to comply with Kessinger's orders" when Deputy Kessinger deployed his Taser the first time. (Defs.' Mot. at 8.) However, other than the initial "resistance" to orders, Defendants do not allege any further misconduct other than Grant twisting his body around after the first Taser strike. (Defs.' Mot. at 9; Kessinger Decl. ¶¶ 5-6.)

### b. Immediate Threat to Safety

The Court next turns to the "most important *Graham* factor"—whether Grant posed an immediate threat to the safety of the deputies or others. *See S.R. Nehad v. Browder*, 929 F.3d

1125, 1132 (9th Cir. 2019) ("The most important *Graham* factor is whether the suspect posed an immediate threat to anyone's safety[.]").

Viewing the record in the light most favorable to Grant, the evidence does not support that Grant posed an immediate threat to the deputies at the time Deputy Kessinger deployed his Taser.[4] Defendants argue that Grant's "unexpected and violent reaction to Kessinger's attempt to secure him in handcuffs posed an immediate threat of harm." (Kessinger Decl. ¶ 3.) Grant alleges that he pulled his arm away from Deputy Kessinger in response to Deputy Kessinger pushing his thumb into a pressure point in Grant's neck. (Pl.'s Resp. at 12-13.) In either event, the video evidence in the record shows that although Grant pulled his arm away from Deputy Kessinger, he remained seated on his bunk until Deputy Kessinger used his Taser. (*See* Video at 00:00:07-09.) The video does not support that Grant was engaging in "violent" behavior that posed an immediate threat to the safety of the deputies or anyone else. (*Id*.) The video further reflects that Grant returned to a seated position after the first Taser was deployed to his stomach. (*See id.* at 00:00:10-12.) It does not appear in the video that Grant "continued to resist" after the first Taser strike and prior to Deputy Kessinger's drive-stun mode Taser strike to Grant's groin. (*See id*. at 00:00:00-25; Kessinger Decl. ¶ 5.)

///

///

---

[4] Where there is video footage in the record, as here, "[t]he record is viewed in the light most favorable to the nonmovants, . . . so long as their version of the facts is not blatantly contradicted by the video evidence." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018) (simplified); *see also Smith v. Agdeppa*, 81 F.4th 994, 997 (9th Cir. 2023) ("[W]hen, as here, we have videotape of the events, [the Court] view[s] the facts in the light depicted by the videotape." (quoting *Scott*, 550 U.S. at 381)), *cert. denied*, 145 S. Ct. 264 (2024). "The mere existence of video footage of the incident does not foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from that footage." *Vos*, 892 F.3d at 1028. Here, the video evidence does not blatantly contradict Grant's version of events.

### c. Active Resistance

Similarly, with respect to whether Grant was "actively resisting," it is undisputed that Grant refused to comply with Deputy Kessinger's initial orders to "go to the sally port" and "cuff up," and that Grant pulled his arm away when Deputy Kessinger attempted to handcuff him. However, thereafter, Grant remained seated on the bunk and made no effort to stand up, run away, or assault the deputies. Viewing these facts in the light most favorable to Grant, he was not actively resisting at the time of the Taser strikes to his groin.

### d. Additional Factors

The *Graham* factors examined above are "not exclusive." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010). Courts "still must 'examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'" *Williams,* 112 F. 4th at 643 (quoting *Bryan*, 630 F.3d at 826).

With respect to the additional "specific factors" relevant to the totality of circumstances analysis, the Court "must take account of the legitimate interests in managing a jail," giving "deference to policies and practices needed to maintain order and institutional security" as a part of the objective reasonableness analysis. *Kingsley,* 576 US at 399-400; *see also Bell,* 441 U.S. at 521 (holding that "[prison practices] must be evaluated in the light of the central objective of prison administration, safeguarding institutional security," and prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"). The Court "must be cognizant of both the deference accorded to prison officials in their difficult task of managing the security needs of the prison, and the right of the pretrial detainee, once subjected to the normal limitations and conditions that attach to their confinement, to be free from punishment." *Redman v. County of San Diego*, 942 F.2d 1435 (9th Cir. 1991).

Defendants argue that Deputy Kessinger's use of his Taser complied with the Multnomah County Sheriff's Office ("MCSO") use of force policy. (*See* Pedro Decl., Ex. 2, MCSO Corrections Division Operational Policy and Procedures Manual ("MCSO Policy").) The MCSO Policy provides that corrections staff may use Tasers for the "suppression of a disturbance with a minimum hazard to staff or subjects." (*Id.* § 8.9.17.) By arguing that Deputy Kessinger's use of his Taser complied with the MCSO Policy, Defendants necessarily acknowledge that Grant's conduct constituted only a "minimum hazard" to the deputies. (*Id.*) In any event, prison regulations do not necessarily "trace the contours of [AICs'] constitutional rights," especially here where the MCSO Policy does not address or authorize corrections staff to apply a Taser to an AIC's groin area. *Cf. Furnace v. Sullivan*, 705 F.3d 1021, 1027 (9th Cir. 2013) ("Prison regulations are drafted to further institutional safety and other prudential considerations, rather than being drawn to perfectly trace the contours of prisoners' constitutional rights. Accordingly, they are not wholly descriptive of the extent of those rights.").

### 3.    Balance of Interests

Finally, the Court must balance "the gravity of the intrusion on the individual and the government's need for that intrusion." *Williamson*, 23 F.4th at 1151. Viewing the evidence in the light most favorable to Grant and balancing the gravity of Deputy Kessinger's alleged intrusion on Grant's rights and the government's need for that intrusion, the Court concludes that a reasonable jury could find that Deputy Kessinger's use of a Taser to Grant's groin area was not justified by the government interests at stake.

Specifically, even if Deputy Kessinger's use of force was related to the government's "legitimate interests . . . [in] manag[ing] the facility . . . [and] preserv[ing] internal order and discipline and . . . maintain[ing] institutional security," *Hyde v. City of Willcox*, 23 F.4th 863, 870 (9th Cir. 2022) (quoting *Kingsley*, 576 U.S. at 397), a reasonable jury could conclude that

Deputy Kessinger's alleged targeting of Grant's groin area was excessive in relation to such purposes. *See Mattos*, 661 F.3d at 446 (holding that where the officers "tased [the plaintiff] three times within less than one minute, inflicting extreme pain on [her,]" a "reasonable fact-finder could conclude, taking the evidence in the light most favorable to [the plaintiff], that the officers' use of force was unreasonable and therefore constitutionally excessive"); *De Contreras v. City of Rialto*, 894 F. Supp. 2d 1238, 1251 (C.D. Cal. 2012) ("An officer's use of a taser is more likely to be unreasonable when the officer deploys the taser more than once.").

Viewing the evidence in the light most favorable to Grant and based on the totality of the circumstances, the Court finds that genuine issues of material fact exist with respect to whether it was objectively reasonable for Deputy Kessinger to tase Grant in the groin area. Accordingly, the Court denies Defendants' motion for summary judgment on Grant's Fourteenth Amendment claim.

## II.    MUNICIPAL LIABILITY

Having determined that Deputy Kessinger is not entitled to summary judgment on Grant's Fourteenth Amendment claim, the Court turns to Grant's municipal liability claim against MCIJ.

### A.    Applicable Law

The Supreme Court has "held that a municipality may not be held liable for a [Section] 1983 violation under a theory of respondeat superior for the actions of its subordinates." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (en banc) (citing *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978)). Rather, "[t]o impose *Monell* liability on a municipality under Section 1983, [a] plaintiff must prove [that]: (1) [the plaintiff] had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to his constitutional right; and (4) 'the policy is the moving

force behind the [municipality's] constitutional violation.'" *Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (quoting *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)).

"Official nonfeasance can constitute a *Monell* violation when the municipality in effect 'has a policy of inaction and such inaction amounts to a failure to protect constitutional rights.'" *Scanlon v. County of Los Angeles*, 92 F.4th 781, 812 (9th Cir. 2024) (quoting *Mortimer v. Baca*, 594 F.3d 714, 722 (9th Cir. 2010)). "To impose liability against a county for its failure to act, a plaintiff must show: (1) that a county employee violated the plaintiff's constitutional rights; (2) that the county has customs or policies that amount to deliberate indifference; and (3) [the county's] customs or policies were the moving force behind the employee's violation of constitutional rights." *Long v. County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (citation omitted); *see also Tobias Partners, L.P. v. City of Los Angeles*, 712 F. App'x 686, 687 (9th Cir. 2018) ("A 'lack of affirmative policies or procedures to guide employees can amount to deliberate indifference, even when the [municipality] has other general policies in place.'" (quoting *Long*, 442 F.3d at 1189)).

**B.    Analysis**

Defendants argue that they are entitled to summary judgment on Grant's claim against MCIJ because Grant failed to name the County as a defendant, and even if he had done so, he fails to state a municipal liability claim. (Defs.' Mot. at 5-7.) As explained below, the Court agrees.

"[L]ocal governmental unit[s] or municipalit[ies] can be sued as a 'person' under section 1983." *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995) (quoting *Monell*, 436 U.S. at 690). "Other types of governmental entities can only be sued if they are intended to be separate and distinct legal entities." *Lukens v. Portland Police Bureau*, No. 3:11-cv-00827-MO, 2011 WL

5999376, at *2 (D. Or. Nov. 29, 2011) (dismissing the Portland Police Bureau as a defendant, with prejudice, from Section 1983 claims because the police bureau is not a distinct entity capable of being sued (citing *Hervey*, 65 F.3d at 792)); *see also Harriel v. Reno Police Dep't*, No. 3:22-cv-00419, 2023 WL 2784642, at *1 (D. Nev. Apr. 5, 2023) ("The Court agrees [that] Washoe County is the proper defendant here, rather than the Jail[.]"); *Salas v. San Diego Cnty. Jail & Med.*, No. 3:16-cv-00736, 2016 WL 1394283, at *3 (S.D. Cal. Apr. 8, 2016) (explaining that "[a] county jail or detention facility is not a proper defendant under [Section] 1983") (citations omitted).

Consistent with these authorities, the Court agrees with Defendants that the County, not MCIJ, is the appropriate defendant here. (*But cf.* Compl. at 2, reflecting that Grant names MCIJ as a defendant). The Court also agrees with Defendants that Grant has not alleged or presented evidence necessary to establish a municipal liability (i.e., *Monell*) claim. (*See* Defs.' Mot. at 5-7, moving for summary judgment on the ground that Grant "does not allege that [c]ounty policy or practice was the cause of his alleged injury"; Defs.' Reply at 2, arguing that Grant "fails to present any arguments with respect to the absence of an actionable *Monell* claim against [MCIJ]"). Notably, Grant acknowledges that the County had use of force policies in place and simply asserts that Deputy Kessinger failed to comply with such policies. (*See* Pl.'s Resp. at 1-17.) Thus, Grant fails to identify any custom, policy, or practice sufficient to support *Monell* liability.

For these reasons, the Court grants Defendants' motion for summary judgment on Grant's *Monell* claim.

///

///

III.    **QUALIFIED IMMUNITY**

The Court turns to whether Deputy Kessinger is entitled to qualified immunity for

Grant's claim for damages.

A.    **Applicable Law**

"Qualified immunity shields government officials from civil liability if 'their actions

could reasonably have been thought consistent with the rights they are alleged to have violated.'"

*Wright v. Beck*, 981 F.3d 719, 726 (9th Cir. 2020) (quoting *Anderson v. Creighton*, 483 U.S. 635,

638 (1987)). The defense "attaches when an official's conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."

*Id.* (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam)); *see also Sandoval v.*

*County of San Diego*, 985 F.3d 657, 671 (9th Cir. 2021) ("Qualified immunity balances two

important interests—the need to hold public officials accountable when they exercise power

irresponsibly and the need to shield officials from harassment, distraction, and liability when

they perform their duties reasonably." (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009))).

"The reasonableness of the officer's conduct is 'judged against the backdrop of the law at

the time of the conduct.'" *Wright*, 981 F.3d at 726 (quoting *Kisela*, 584 U.S. at 104); *see also*

*Wilk v. Neven*, 956 F.3d 1143, 1148 (9th Cir. 2020) (asking "whether the applicable law was

'clearly established at the time of the incident'" (quoting *Pearson*, 555 U.S. at 231)). "Officials

are subject to suit only for actions that they knew or should have known violated the law." *Wilk*,

956 F.3d at 1148 (citing *Hope*, 536 U.S. at 741). The Supreme Court has explained that the

"[l]aw is 'clearly established' for the purposes of qualified immunity if 'every reasonable official

would have understood that what he is doing violates the right' at issue." *Id.* (simplified)

(quoting *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (per curiam)).

///

PAGE 17 – OPINION AND ORDER

In evaluating "qualified immunity in the context of summary judgment, [courts] consider (1) whether the evidence viewed in the light most favorable to the plaintiff is sufficient to show a violation of a constitutional right and (2) whether that right was 'clearly established at the time of the violation.'" *Sandoval*, 985 F.3d at 671 (quoting *Horton v. City of Santa Maria*, 915 F.3d 592, 603 (9th Cir. 2019)). Defendants are "not entitled to qualified immunity simply because 'the very action in question has [not] previously been held unlawful.'" *Sandoval*, 985 F.3d at 680 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "State officials can still be on notice that their conduct violates established law even in novel factual circumstances—i.e., even without a prior case that had fundamentally similar or materially similar facts." *Id.* (simplified) (quoting *Wilk*, 956 F.3d at 1147).

## B.    Analysis

As discussed, Grant raises a genuine issue of material fact as to whether Deputy Kessinger violated his constitutional rights. The question, then, is whether Grant's Fourteenth Amendment rights were clearly established at the time of the alleged violations. *See Bogle v. Clackamas County*, No. 3:15-cv-0013-SI, 2017 WL 5490870, at *14 (D. Or. Nov. 15, 2017) (finding the same).

The Court finds that the issue of qualified immunity is premature because it will depend on the jury's resolution of disputed facts. *See Rosales v. County of Los Angeles*, 650 F. App'x 546, 549 (9th Cir. 2016) ("Qualified immunity is . . . 'premature' at this [summary judgment] stage because it 'may depend on the jury's resolution of disputed facts and the inferences it draws therefrom.'" (quoting *Santos v. Gates*, 287 F.3d 846, 855 n.12 (9th Cir. 2002), *overruled on other grounds as recognized in Sabbe v. Wash. Cnty. Bd. of Comm'rs*, 84 F.4th 807, 828 n.19 (9th Cir. 2023))); *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in

their favor, and against the non-moving party, summary judgment is not appropriate[.]"); *see also Sullivan v. Multnomah County*, No. 3:19-cv-00995-JGZ, 2021 WL 4248082, at *8 (D. Or. Sept. 17, 2021) (denying the defendants' motion for summary judgment on qualified immunity grounds where there were "disputed issues of material fact as to whether [the defendants] violated Plaintiff's Fourteenth Amendment right to be free from excessive force" and "a reasonable jury could find that this force went beyond what was necessary to maintain order in the situation").

Specifically, the parties dispute whether Deputy Kessinger deliberately tased Grant in his groin area. If Grant's version of the facts ultimately prevails, Deputy Kessinger will not be entitled to qualified immunity because a reasonable corrections official would have understood at the time of the incident that purposefully tasing an AIC in the groin under the circumstances present here violates the AIC's right to be free from objectively unreasonable force. *See Lolli*, 351 F.3d at 421 ("If [the plaintiff]'s version of the facts ultimately prevails, there is a reasonable likelihood that the officers would not be entitled to qualified immunity.").

As a general matter, the degree of force a prison guard may use has been clearly established for many years. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) (noting that the Supreme Court established in *Graham* that "force is only justified when there is a need for force"); *Martinez v. Stanford*, 323 F.3d 1178, 1183-84 (9th Cir. 2003) (holding that summary judgment on the officers' qualified immunity defense to an excessive force claim was precluded by genuine issues of disputed fact as to the degree of force because "the law regarding a prison guard's use of excessive force was clearly established by 1994"). More specifically, it was also clearly established that using force on a pretrial detainee engaged in passive or no resistance is objectively unreasonable. *See, e.g.*, *Fletcher v. Marquardt*, 753 F.

App'x 449, 450 (9th Cir. 2019) (holding that "the district court did not err in denying [the defendant's] motion for summary judgment based on qualified immunity" because "[t]he law is clearly established that a reasonable correctional officer cannot administer strong blows upon a compliant pretrial detainee without violating the detainee's right under the Fourteenth Amendment's Due Process Clause to be free from objectively unreasonable force purposely used against him" (citing *Felix v. McCarthy*, 939 F.2d 699, 701 (9th Cir. 1991))); *Atencio v. Arpaio*, 674 F. App'x 623, 625-26 (9th Cir. 2016) (holding that "*Lolli* should have put a reasonable official on notice that he was prohibited from the type and amount of force used against [a pretrial detainee], including multiple strikes to the face, repeated Tasering, and a knee strike, when [the detainee] was at most passively resisting, he posed no threat to the officers, and he was already being physically restrained by several officers"); *Warren v. County of Riverside*, No. 18-cv-01280, 2021 WL 4594777, at *9 (C.D. Cal. Mar. 26, 2021) ("Even more on point is *Lolli* . . . in which the Ninth Circuit held that, viewing the facts in the light most favorable to the plaintiff, deputies who beat a non-resisting pretrial detainee asserting a medical issue used constitutionally unreasonable force." (citing *Lolli*, 351 F.3d at 415)); *Bodney v. Pima Cnty. Sheriff's Dep't*, No. 06-cv-00015, 2009 WL 2513786, at *12 (D. Ariz. Aug. 7, 2009) ("Any reasonable officer would know that it is unreasonable to push, knee, and strike a detainee who is cursing but not threatening or striking out at the officer.").

Even more specifically, courts have consistently recognized that any reasonable officer would understand that deliberately or gratuitously targeting an individual's groin area constitutes objectively unreasonable force:

- *Moreno v. Doe*, No. 2:23-cv-07084, 2024 WL 5275507, at *5 (C.D. Cal. Nov. 27, 2024) ("[T]he Court finds that qualified immunity does not apply because

'every reasonable official would have understood' that twice squeezing

Plaintiff's genital area during a pat-down with such force that Plaintiff later

requires medical attention is excessive force in violation of Plaintiff's Fourth

Amendment rights. To be sure, the general constitutionality of police officers

touching a subject's genital area during searches is far from clear-cut, and

qualified immunity would likely bar most suits regarding this subject. But

when the genital touching is gratuitous and forceful, as Plaintiff contends in

this case, application of qualified immunity is not appropriate." (first citing

*DeCastro v. Las Vegas Metro. Police Dep't*, No. 2:23-cv-00580, 2024 WL

4189939, at *16 (D. Nev. Sept. 12, 2024); and then citing *Vosburgh v.*

*Bourassa*, No. 07-cv-00101, 2008 WL 3166387, at *8 (D.N.H. Aug. 5,

2008)));

- *DeCastro*, 2024 WL 4189939, at *16 (holding that police officers were not

  entitled to qualified immunity for gratuitously striking the plaintiff in the

  groin during a pat-down search);

- *Rodriguez v. Cnty. Jail of San Bernardino,* No. 5:15-cv-02405, 2017 WL

  11632820, at *3 (C.D. Cal. Nov. 17, 2017) ("[A] reasonable officer would

  have had fair notice that striking an inmate's genitals with clasped hands

  while [he] was compliant during a routine pat-down search is unreasonable.");

- *Vosburgh*, 2008 WL 3166387, at *8 (holding that "summary judgment based

  upon qualified immunity is not appropriate because, whether [the defendant]

  deliberately struck plaintiff in the groin, without a legitimate penological

purpose, and to cause plaintiff pain, are, on this record, genuine issues of
material fact"); and

- *Dang v. Cross*, No. 00-cv-13001, 2002 WL 31368991, at *2 n.8 (C.D. Cal.
Oct. 16, 2002) ("The Court does note that it can and does resolve the claim of
qualified immunity, which is an immunity against suit, in favor of plaintiff.
Plaintiff asserts that he was kicked in the groin by [the defendant] after he was
arrested and taken into custody; [the defendant] denies engaging in such
conduct. While the Court cannot resolve the factual dispute, the Court can and
does conclude, on the record before it, that, if it did occur, no reasonable
officer could have concluded that such conduct was consistent with the
constitution.").

For these reasons, the Court denies Defendants' motion for summary judgment on the
basis of qualified immunity.

## CONCLUSION

For the reasons stated, the Court GRANTS IN PART and DENIES IN PART
Defendants' motion for summary judgment (ECF No. 18).

**IT IS SO ORDERED.**

DATED this 30th day of September, 2025.

HON. STACIE F. BECKERMAN
United States Magistrate Judge